IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VIVIAN M. JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 2:18-cv-262-TFM-N |
| | : | |
| GLOBE SPECIALTY METAL, INC., | : | |
| a/k/a FERROGLOBE/GLOBE | : | |
| METALLURGIC, INC., and | : | |
| FERROGLOBE METALURGIC, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Globe Metallurgical, Inc.'s ("Globe" or "Defendant"),[1] *Motion for Summary Judgment*. Doc. 76, filed April 29, 2019. The motion has been fully briefed (Docs. 76, 80, & 81) and is ripe for review. Having considered the motion and relevant law, the Court finds the Motion for Summary Judgment is due to be **GRANTED**.

## I.    JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

---

[1] Globe states it is erroneously named and referred to in Plaintiff's Third Amended Complaint as "Globe Specialty Metal, Inc., also known as Ferroglobe/Globe Metallurgic, Inc., and Globe Metallurgic Inc." Globe states Globe Specialty Metals, Inc., did not employ Plaintiff and is not an appropriate defendant in this matter. In support, Globe states Plaintiff was employed by it. Therefore, the Court will treat Globe's argument as if they were made by Globe Specialty Metal, Inc., and any reference by the Court to Globe will implicitly include Globe Specialty Metal, Inc.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

On June 6, 2018, Plaintiff Vivian M. Jones ("Jones" or "Plaintiff") originally filed in this Court her Complaint for Employment Discrimination, in which she brought against Globe claims of gender and race discrimination, pursuant to Title VII. Doc. 1. In Jones's Complaint, she states she filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 18, 2018. Doc 1 at 4. Jones subsequently filed her Amended Complaint for Employment Discrimination and Second Amended Complaint for Employment Discrimination, on June 7, 2018, and June 11, 2018, respectively. Docs. 2, 3.

On July 2, 2018, Defendants Globe, Lee Payssa ("Payssa"), and Stephen Smith ("Smith") filed their Motion for Partial Dismissal of the Second Amended Complaint, in which they argued Payssa and Smith, who were identified as employees of Globe by Plaintiff in her Second Amended Complaint, could not be held personally or individually liable pursuant to Title VII. Doc. 9, at 1-2. After the motion for partial dismissal was fully briefed (*see* Docs. 13 & 18), the assigned Magistrate Judge entered a Report and Recommendation, in which she recommended the motion be granted and the claims against Payssa and Smith be dismissed with prejudice (Doc. 21). The Report and Recommendation was subsequently adopted as the opinion of the Court, which left Globe as the sole defendant. Doc. 24.

On January 7, 2019, Plaintiff filed her Third Amended Complaint for Employment Discrimination (Doc. 48), which the Court construed as a motion for leave to file a third amended complaint (Doc. 49). Globe filed its response to the motion, in which it stated it did not object to the motion (Doc. 50), the motion was granted (Doc. 51), and the Third Amended Complaint was entered as the operative pleading.

On April 29, 2019, Globe filed its instant Motion for Summary Judgment, in which it requests the Court dismiss Plaintiff's claims. Doc. 76. The Court entered a submission order for the motion. Doc. 78. Jones timely filed her reponse, and Globe filed its reply. Docs. 80, 81. The motion is fully briefed and ripe for review.

**B.     Factual Background[2]**

Jones, an African-American female, worked for Globe at its plant in Selma, Alabama ("Selma Plant"), from December 2003 until her termination in September 2017. Doc. 76-2 at 6-7. Jones was first placed in the Accounts Payable Department at Globe through a temporary staffing agency, Manpower. *Id.* at 12-13. Jones worked in the Accounts Payable Department from December 2003 until July 2004, when Globe decided to employ her in a fulltime position. *Id.* at 12.

Prior to her employment with Globe, Jones worked for various companies, including Stanfast Printing and Hormel Food Service. *Id.* at 7-10. Jones was terminated from her positions with Stanfast Printing and Hormel Food Service for absenteeism and failure to report to work on time. *Id*. at 8-10.

In 1993, Jones pled no contest to two (2) counts for violations of the Georgia Employment Security Act for "knowingly making a false representation to obtain benefits" in violation of the Act, for which she received twelve (12) months of probation and was ordered to pay a $1,186.00 fine, $946.00 of which was suspended. *Id.* at 17-20. In 1997, Jones pled gulty to one (1) count of "Allowing Driver to Violate State Law" in violation of Georgia Code § 40-1-3, for which she

---

[2] The Court notes in Jones's response to the motion for summary judgment and in response to Globe's statement of undisputed facts, Jones states, paragraph by paragraph, whether she disputes the facts as stated by Globe. Therefore, the Court's facts mirror Globe's facts insofar as they are undisputed by Jones.

received a $200 fine. Doc. 76-6. Specifically, Jones pled guilty to allowing the driver, Eddit Walter, of the vehicle she occupied to drive "while suspended" and assisted Walter with giving to a law enforcement officer a false name and date of birth. *Id.* at 3.

To become a full-time employee with Globe, Jones was required to complete an application for employment, which she completed on June 21, 2004. Doc. 76-2 at 11-12. On Jones's application for employment, she indicated she understood and acknowledged as follows: "I certify that all the information that I provide on this application and in any interview will be true and accurate. I understand that if I am employed and such information is later found to be false or misleading in any respect I may be dismissed." *Id.* at 14. Despite Jones's acknowledgment in her application, she represented she left Stanfast Printing for a "better job;" she had not been terminated, or asked to resign, from any job; and she had never pled "guilty" or "no contest" to a crime. *Id.* at 15-16, 21-22. Globe was not aware of Jones's misrepresentations until after she initiated the instant action. Doc. 76-1 ¶ 14.

On July 1, 2004, Jones began her full-time employment with Globe in its Accounts Payable Department. Doc. 76-2 at 12. Jones remained in that position until sometime in 2006 when she was offered, and accepted, the position of Human Resources Specialist ("HR Specialist"). *Id.* at 23-24. As an HR Specialist, Jones reported to Steve Pralley - the then Selma Plant Manager - and was responsible for maintaining "harmony between the company and the union," and recruiting and conducting interviews, with direction from the plant manager. *Id.* at 23-25. As an HR Specialist, Jones received positive evaluations and pay increases. *Id.* at 26-27.

Sometime in 2008, Jones was promoted to HR Manager. *Id.* at 28. As HR Manager, Jones believed she was responsible for "bring[ing] harmony between the employee and the company;" assisting the plant manager, director of HR, corporate director of HR, and any other Globe

executives; and ensuring the enforcement of Globe policies. *Id.* at 30-31. Jones was also involved in decisions that were related to discipline and discharge within the Selma Plant and interviewing employees for open positions. *Id.* at 31-32. Jones understood, in her position as HR Manager, she occupied a position of trust, and an important part of her position was to provide truthful information. *Id.* at 29, 31.

Globe's HR Department is not solely under the management of the individual plants; as HR Manager, Jones had responsibilities to both the Plant Manager, Stephen Smith, and the Corporate Director of HR, Lee Payssa. Doc. 76-3 at 21. For the relevant time period for this case, Payssa was Jones's direct supervisor. Doc. 76-2 at 63. Payssa did not typically have any involvement in the discipline or termination of non-HR employees within the Selma Plant, although Smith would sometimes consult with him on such matters. Doc. 76-3 at 25. Globe does not maintain a written disciplinary or progressive discipline policy for its non-unionized employees. *Id.* at 26; Doc. 76-2 at 63. Globe's practice was to determine the appropriate discipline on a case-by-case basis, based on the severity of the conduct. Doc. 76-3 at 26.

As the Selma Plant Manager, Smith was responsible for supervising all of the Selma Plant employees, except for Jones, and made disciplinary determinations for those employees. Doc. 76-2 at 63. Jones routinely consulted with Smith on Selma Plant employee disciplinary issues. *Id.* at 50. Smith made the final decision as to what the disciplinary action would be, but he typically sought Jones's advice on the subject and often followed it. Doc. 76-4 at 63-64.

As HR Manager, Jones also participated in the employee hiring process for the Selma Plant. Doc. 76-2 at 31-32. The hiring process would begin when Jones would advertise open positions, then collect resumes from applicants for the available positions and distribute them to the hiring committee for review. Doc. 76-4 at 12-13. The hiring committee, which typically comprises the

Plant Manager, HR Manager, Furnace Department Manager, Shipping Manager, Bag-House Manager, and any other manager or supervisor for the specific hiring department, would review the resumes, conduct interviews, and make collective hiring decisions. *Id.* at 10-11 & 13-14. Jones was responsible for conducting background checks and other necessary pre-employment investigations for potential employees, and finalizing employment decisions based on the results of those pre-employment investigations.[3] *Id.* at 14-15.

Claude Bess informed Jones that Globe was not allowed to hire anyone that was previously terminated from the company or had a prior felony.[4] *Id.* at 21. On September 17, 2017, Jones was emailed the same information by Payssa (Doc. 76-3 at 38-39 & 73), but she denies that she received the email (Doc. 76-2 at 46). Specifically, Payssa's email to Jones stated:

> Just a reminder that we need to be aggressive this week to complete hiring for the furnace 1 startup. I won't have a chance to there [sic] early this week however possibly later in the week. Also, I have heard some rumors that we are hiring people who we have terminated in the past and possibly have criminal records. I am sure this is not true, right? Not sure why I'm hearing this but lets [sic] talk in the morning.

Doc. 76-2 at 79.

On September 18, 2017, Payssa spoke with Jones and confirmed with her she was not violating Globe's policy of not hiring applicants who were previously terminated from the company or had a prior felony.[5] *Id.* at 48. After Jones received the background checks for two

---

[3] Plaintiff disputes this fact because she states there "was no policy in place" and she "was trying to establish a policy" (Doc. 80 at 5), but does not cite to evidence that would put this fact in dispute.

[4] Plaintiff disputes this fact because she states there "was no policy in place" and she "was trying to establish a policy," (*id.*) but does not cite to evidence that would put this fact in dispute.

[5] Plaintiff disputes this fact because she states she, at the time, had not hired anyone who was previously terminated from the company or had a prior felony. *Id.* However, such is not what is asserted by the statement.

(2) candidates, both of whom had prior felonies, she emailed the results of the checks to Payssa, who responded "Let's pass." Doc. 76-2 at 41. Jones states she mistook Payssa's response to mean "pass the guys through," so she hired them. *Id.*

On September 27, 2017, Payssa visited the Selma Plant and, while there, met with Jones about her hiring efforts. *Id.* at 40. Jones alleges:

> [W]hen [ ]Payssa came to the plant that day, I told him I needed to talk to him before I go. So he came in the office. And I said, okay, what are going to be the guidelines for hiring someone with [a] criminal background. I said, I've checked around. I said, most companies that have people that have bad background for five, six, or seven years, I said, they usually look over that. [ ]Payssa said, why do you want to hire these guys with a bad background, I said, no, that we wasn't going to hire them, and that's what I meant. And he left the office.

*Id.* Later that day, Jones called Payssa and informed him she hired two (2) candidates with prior felonies. *Id.* at 41. Payssa did not immediately terminate her employment because he felt that it would have been a "rash decision." Doc. 76-3 at 32. Instead, Payssa consulted with Bess and Smith before he made his decision. *Id.* Specifically, Payssa asked Smith if there were any other positions that were available for Jones in the Selma Plant that were not, "for [Payssa,] in a trusted position." *Id.* at 32 & 48; Doc. 76-4 at 27. Smith informed Payssa there were no other such available positions for Jones. Doc. 76-4 at 102-103. Payssa informed Bess about Jones's actions, and Bess agreed it would be necessary to terminate Jones's employment.[6] Doc. 76-3 at 33.

On September 28, 2017, Payssa terminated Jones's employment with Globe. *Id.* at 29. Payssa stated Jones's was terminated for "lying" while Jones stated she was terminated for "put[ting] the company in jeopardy." *Compare id. with* Doc. 80-1 at 30. Jones's HR duties were

---

[6] Plaintiff disputes this fact because she states she talked to Bess and "he did not tell her that he had recommended her termination." *Id.* at 6. However, the fact Bess did not inform Plaintiff he recommended she be terminated does not negate the fact that Payssa stated in his deposition he discussed the matter with Bess and Bess agreed Plaintiff should be terminated.

taken on by Tonya Thomas, who is an African-American female. Doc. 76-4 at 70-74. Thomas performed for two and one-half months the HR duties in addition to her original job duties until she was replaced by Max Whitney, who is a male of Afro-Brazilian and Ibearian-Jewish-Sephardic descent and the current HR Manager at the Selma Plant. *Id.* at 70-71, 74; Doc. 76-5 at 3.

Jones alleges she was terminated by Globe because of her race and gender. Doc. 76-2 at 34. Jones alleges she was retaliated against "for hiring on the basis of qualifications rather than skin color." Doc. 48 at 4. Jones alleges her termination was discriminatory because several of Globe's male supervisors violated Globe's written policies and were not terminated. *Id.* Specifically, Jones alleges the following male supervisors were treated differently from her: Jason Adams, Robert Atkins, Sr., Frank James, Mark Nau, Wilbur Rose, Lorenzo Simmons, Arthur Sturdivant, Percy Towns, Gregory Trusty, Eugene Tyre, Ronnie Walker, Antonio Williams, and Robert Wymer. Doc. 76-2 at 35-38, 54-62, 64-65; Doc. 80-1 at 19-20, 36, 64-65, 73.

### III. STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 F. App'x 955 (11th Cir.) (quoting *Anderson*, 477

U.S. at 248, 106 S. Ct. at 2510).[7] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at

---

[7] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## IV. DISCUSSION AND ANALYSIS

As an initial matter, in Jones's response to the motion for summary judgment, she states she withdraws her claim of retaliation and does not contest the issue of front-pay and reinstatement. Doc. 80 at 13, 15. Additionally, Jones does not argue she was discriminated against based on her race, but only claims she was discriminated against based on her gender. *See* Doc. 80. Therefore, the Court deems her Title VII claim for race discrimination abandoned. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted) ("There is no burden upon

the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Therefore, Jones's sole remaining claim for the Court's analysis is gender discrimination.

Jones claims Globe discriminated against her because of her gender when it fired her. Globe argues Jones does not have direct evidence that Globe discriminated against her. Doc. 76-1 at 13-14. Jones argues there is direct evidence of discrimination because she was terminated by Globe after her first disciplinary violation while similarly situated male supervisors were not terminated after multiple of such violations. *See* Doc. 80 at 10-12. Globe argues Jones was never told her termination was based on her gender, nor did Payssa or Smith remark about her gender. Doc. 76-1 at 13.

"Direct evidence of discrimination is 'evidence which reflects a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1357 (11th Cir. 1999)). Direct evidence is "evidence that, if believed, proves [the] existence of [a] fact without inference or presumption." *Id.* (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)). "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)).

While Jones has identified male supervisors who had multiple disciplinary violations for which they were not terminated, that is not direct evidence that she was terminated because of her

gender. Rather, it requires inference. Therefore, Jones must rely on circumstantial evidence to support her claim of gender discrimination.

Since Jones relies on circumstantial evidence, the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973) [hereinafter McDonnell Douglas], applies.

> If a Title VII plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas* [ ], 411 U.S. [at] 802-03, 93 S. Ct. [at] 1824-25 [ ]). If the employer articulates a legitimate, nondiscriminatory reason for its actions, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *see also Tex. Dep't of Cmty. Aff. v. Burdine*, 450 U.S. 248, 255-56, 101 S. Ct. 1089, 1094-95, 67 L. Ed. 2d 207 (1981). The plaintiff must meet the reason proffered head on and rebut it. *Wilson*, 376 F.3d at 1088. If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).

*Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).

To establish a prima facie case, Jones must show she "(1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class or that her employer treated similarly situated employees outside of her class more favorably." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

Globe argues Jones cannot establish a prima facie case because she cannot identify a similarly situated individual who is outside of Jones's protected class and was treated more favorably than she was. *See* Doc. 76-1 at 14-19.[8]

---

[8] In Jones's response, she does not argue she was replaced by someone outside of her protected class. *See* Doc. 80. Indeed, Jones's HR duties were taken on by Tonya Thomas, an African-American female. Doc. 76-4 at 70-71.

The Eleventh Circuit Court of Appeals took up the case of *Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019), "to clean up, and to clarify once and for all the proper standard for comparator evidence in intentional-discrimination cases." *Id.* at 1218. The Eleventh Circuit clarified, "a plaintiff proceeding under *McDonnell Douglas* must show that she and her comparators are 'similarly situated in all material respects.'" *Id.* at 1226.

> [P]recisely what sort of similarity the in "all material respects" standard entails will have to be worked out on a case-by-case basis, in the context of individual circumstances. But we are not without guideposts.
>
> We know, for instance, that the plaintiff and her comparators need *not* be "similar in all but the protected ways." *Young* [*v. United Parcel Serv.*], 135 S. Ct. [1338,] 1354[, 191 L. Ed. 2d 279 (2015)]. A plaintiff needn't prove, therefore, that she and her comparactors are identical save for their race or gender, as the case may be. Not even the nearly-identical standard requires that level of exactitude. Nor is it necessary for a plaintiff to prove purely formal similarities-*e.g.*, that she and her comparactors had precisely the same title. *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) ("The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies.") (citation omitted). Nor will minor differences in job function disqualify a would-be comparator. *See, e.g., Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (concluding that minor "differences in . . . job activities" did not "automatically" disqualify plaintiff's proffered comparators, at least where they held "related human resources positions").
>
> Having said that, we can also envision the sorts of similarities that will, in the main, underlie a valid comparison. Ordinarily, for instance, a similarly situated comparator-
>
> - will have engaged in the same basic conduct (or misconduct) as the plaintiff, *see, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992) (holding that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination");
> - will have been subject the same employment policy, guidelines, or rule as the plaintiff, *see, e.g., Lathem*, 172 F.3d at 793 (holding that a plaintiff's proffered comparators were valid where all were subject to the same "workplace rules or policies");
> - will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff, *see, e.g., Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (observing that "disciplinary measures undertaken by different supervisor may not be comparable for purposes of the Title VII analysis"); and

- will share the plaintiff's employment or disciplinary history, *see, e.g.*, *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators).

    In short, as its label indicates – "all material respects" – a valid comparison will turn not on formal labels, but rather on substantive likenesses. To borrow phrasing from a recent Supreme Court decision, a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they "cannot reasonably be distinguished." *Young*, 135 S. Ct. at 1355.

*Lewis*, 918 F.3d at 1227-28 (footnotes omitted).

In Jones's response and in her deposition, she identifies numerous male supervisors she alleges were treated differently from her. Globe argues the employees that Jones puts forth as comparators are distinguishable because they were not disciplined for lying to a supervisor, not employed in positions of trust like Jones, and were disciplined for violations of safety rules or failure to follow job safety instructions. *See* Doc. 76-1 at 15-19.

During Jones's deposition, she could not identify any other employee of the company who held her position and was terminated for lying to the director of HR (Doc. 76-2 at 35), so she has not identified a direct comparator. The Court reviewed Jones's deposition and the documented notices of violation for Globe supervisors that were attached to the motion for summary judgment and response, and introduced during the depositions of Jones and Smith, to find a similarly situated comparator. Of those comparators identified by Jones, only Jason Adams, Robert Atkins, Sr., and Ronnie Walker were discussed during her deposition, and there is not evidence of any violations by them attached to the motion for summary judgment or response, nor did Jones describe any of their offending conduct except to state, on several occasions, their supervisor talked to them. *See* Doc. 80-1 at 64-65, 73. Without more information, the Court cannot conclude Adams, Atkins, Sr., or Walker are similarly situated comparators as required.

As for the other comparators who were identified by Jones and had documented notices of violations,[9] the Court's review of the notices shows most of them are related to violations of safety, housekeeping, and production procedure policies, as well as for failures to follow instructions. *See* Doc 76-2 at 81-104; Doc. 76-4 at 121-150; Doc. 76-8 at 2; 76-9 at 2; 76-10 at 2-8; 76-11 at 2-3; 76-12 at 2-3; Doc. 76-13 at 2; 76-14 at 2-9. The described conduct in the notices was different from that of Jones's, and all of the notices were for supervisors who were overseen by Smith, not Payssa, and employed on the production side of the operation, not the adiministrative side, and would be subject to different policies, guidelines, or rules. *See* Doc. 76-2 at 36; Doc. 76-4 at 100.

Globe identifies three (3) potential comparators, Eugene Tyre, Robert Wymer, and Mark Nau. *See id.* at 16 n.10, 17 n.12. Tyre, a production manager, falsified his timesheets and was disciplined by Smith, who directed Jones to not pay Tyre for the time he did not work. Doc. 80-1 at 6-7. While Tyre's act *could* be characterized as lying, and in that regard it was generally similar to Jones's act, Tyre was a manager on the production side of the operation, was supervised by Smith (not Payssa), and received multiple disciplinary actions that included verbal warnings, written warnings, suspensions, and demotions for safety violations - disregard for safety, failure to wear protective gear, failure to follow procedure, failure to follow instruction, violation of company work rules for sleeping in the control room - and Jones had only one discplinary action that resulted in her termination. *See* Doc. 76-2 at 36; Doc. 76-4 at 121-33. Moreover, mere falsity in Tyre's timesheets is not sufficiently comparable to Jones's conduct. Jones, in a position of trust as HR Manager, was told to pass on two (2) candidates for employment, both of whom had been convicted of felonies, and she hired them despite her supervisor's instruction. While Tyre's act

---

[9] Those remaining comparators include Frank James, Mark Nau, Wilbur Rose, Lorenzo Simmons, Arthur Sturdivant, Percy Towns, Gregory Trusty, Eugene Tyre, Antonio Williams, and Robert Wymer.

was an act of subterfuge, Jones's act was in direct opposition to her supervisor's instruction. Also, the ramifications of Jones's act far outweigh the impact of Tyre's transgression because of the potential impact to the company. For these reasons, the Court finds Tyre was not similarly situated in all material respects to Jones.

As for Wymer, he was issued a notice of suspension by Payssa, who consulted with Jones about the subject, because he printed from the Selma Plant network printer a racially derogatory image, which was a violation of Globe's internet usage and security policy. Doc. 76-8 at 2. Wymer's conduct is also not comparable to Jones's and his situation is further distinguishable because he was employed on the production side of the operation. Therefore, the Court finds Wymer was not similarly situated in all material respects to Jones.

As for Nau, during Jones's deposition, she indicated Nau was removed from his position as the Selma Plant manager and assigned to visit different plant locations because he was "talked to" by Payssa and the "CEO" on multiple occasions. *See* Doc. 80-1 at 19. However, while Nau may have been in a position of responsibility similar to Jones, she does not describe Nau's conduct violations that could be considered comparable to her own, and Nau did not report to Payssa. Doc. 76-3. Payssa stated in his deposition he was instructed about how to deal with Nau and executed those instructions. *Id.* Therefore, the Court finds Nau was not not similarly situated in all material respects to Jones.

Since Jones has not identified a comparator who is similarly situated to her in all material respects, she has not established her prima facie case, and her claim of gender discrimination fails.

Further, even if Jones established her prima facie case, Globe argues she was terminated for a legitimate, non-discrimnatory reason: Payssa believed she lied to him when she told him she had not hired two (2) applicants with felony backgrounds when, in fact, she had hired them. Since

Globe articulated a legitimate, nondiscriminatory reasons for terminating Jones, it has rebutted the presumption of discrimination, and the burden shifts to Jones to offer evidence that shows Globe's proferred reason is a pretext for illegal discrimination. *See Crawford*, 482 F.3d at 1308. Jones argues Globe changed the reason for her termination from "putting the company in jeopardy" to "lying" so Globe, presumably, could amplify the egregiousness of her conduct to justify the fact that male supervisors had not been terminated for similar conduct afer multiple violations. *See* Doc. 80 at 14-15. While Jones argues the difference between the proffered reasons for her termination is evidence of pretext, the Court does not find any nefarious intent from the characterization of Jones's conduct as either "putting the company in jeopardy" or "lying." Both characterizations are a fair description of Jones's conduct and do not demonstrate pretext for gender discrimination.

Since Jones has not shown pretext for gender discrimination, even if she established her prima facie case, her claim of gender discrimination fails.

## V. CONCLUSION

Based on the foregoing discussion and analysis, Defendant Globe Metallurgical, Inc.'s, Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims are **DISMISSED with prejudice**.

A separate judgment will be entered pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 13th day of August 2019.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE